The next case this morning is number 5-20-0426, En Re Marriage of Evans. Arguing for the appellant, Brian Evans, is Amanda Bradley. Arguing for the appellate, Teresa Evans, is Sarah Rice. Each side will have 15 minutes for their argument. The appellant will also have 5 minutes for rebuttal. Please note only the clerk of the court is permitted to record these proceedings today. Good morning, counsel. Good morning, your honor. Do we want to clean up? I don't see the appellant. I see Truett. What do you guys see? You see Ms. Rice? Oh, okay. Oh, yeah, right, okay. All right. Counsel, are you ready to proceed? I am. Then go right ahead. Good morning, your honors. And may it please the court. I and trial counsel are here today to represent Brian Evans. This case began in July of 2020. My client had his kids the night before everything went down. He had them for about six hours and took them to their mom's house to stay the night because he got called in to work. My client is a military man, and his schedule can be a tiny bit unpredictable. Six weeks prior to this night, the daycare that the children would attend the next day had been investigated for abusing the younger child who was three. He has turned four now. My client took the kids to their mom's house, dropped them off, had pleasant conversation and went to work. Nothing was amiss. During the six hours he had his kids. He played, he had supper, and he delivered three little swats of appropriate discipline to his younger son. The first time, the younger one threw a toy at his brother's face and made his brother cry. The second time, the younger one was toilet training, had been taken to the restroom, didn't use the restroom, and urinated in his pants several moments later. The last time, the boys were getting too active in the bathtub, and he stopped them from getting too active. And when the younger one wouldn't calm down, gave one last little tap. Discipline can be appropriate and is allowed as a parenting decision. I'm going to give you four reasons today why you should reverse and remand this case for further hearing. The first one is every action prior to April 2019 should be barred and should have been barred from hearing. At the very beginning of the hearing, my trial counsel said, this is outside the scope of the pleadings. If this case had been only in the domestic relations court, it would have been evident that it was barred. Race judicata is older than time. It is a foundation bedrock of our jurisprudence. It would have barred under the Domestic Relations Act any action prior to the party's divorce. No matter how they got to the divorce, it was barred. You don't get a mulligan under the Domestic Violence Act. Moreover, any behavior that she could have complained of, she could have complained of to her attorney at the time, Ms. Rice. She had Ms. Rice review the documents before she signed off on them. It was an agreed divorce where all the parenting decisions were considered. She didn't. She didn't bring up anything. And domestic abuse is part of the best interest question that a trial court must consider when it's making a parenting decision. She was also collaterally stopped from bringing up that which she could have brought up. She had her opportunity to do so, to allege that Brian was mean, that he engaged in verbal spars with her, that he had pushed her into a kitchen counter. She didn't. Instead, the trial court heard considerable evidence under the Domestic Violence Act of what had happened prior to their divorce. But their divorce is an absolute bar to evidence prior to April of 2019. In hearing such evidence, the trial court did find that Teresa was an abused person and that the older child, who was five at the time, he is now six, pardon, was also abused because he had seen his parents engage in a fight. Neither of those findings should stand and nor would they in the Domestic Relation Court, which leads to my second topic. Under Supreme Court Rule 903, the local rules and the Domestic Violence Act, we are encouraged to find one judge for a family. It leads to more consistent rulings, one judge knowing all the evidence and not having to run down the hall, and it stops people from forum shopping. When the court engaged in its second hearing to modify the order of protection, there was a pending motion to modify parenting time. In fact, the second hearing in November was a motion to modify parenting time. It was called as such. And at that point, it should have been crystal clear that the domestic violence judge needed to step off her bench and go see if the domestic relations judge could hear it. It was called as an emergency motion, no different than the August motion to stop parenting time. It is simply improbable that Judge Campbell, the Domestic Relations Court, had no hearings between August and November to hear even two hours of testimony about this family. Ms. Rice admitted on the record, I came here because I could get a date, not I knew I needed to go to the Domestic Relations Court to modify parenting time. PACLIC, Petalino, and the two GP cases strongly support this, and the failure to consider it does require de novo review. While the rules themselves are discretionary, avoiding them is not, and avoiding them and not walking down the hall to coordinate hearings requires this court to remand for hearing before one judge who will hear all of the evidence. The Domestic Violence Act is one that is designed to prevent abuse. Well, what is abuse? Parents have the right to discipline their children, control their children, because strong parents lead to strong children. And children, especially the ages of these children, are tough. Three and five active little boys being raised in a divorced house. But what the evidence shows is between April of 2019 and July of 2020, these parents got along. They talked respectfully, they spoke to each other civilly, and they generally parented. They parented through the daycare being investigated for abusing these children. And remember, the daycare had just been investigated in the six weeks prior. On the morning of the incident in question, Teresa, the mother, woke the children up, helped the younger one clean himself up, helped him get dressed, and took him to daycare, where several hours later, it was discovered that there were bruises on the child's buttocks and back. No one at any point in time measured the hand size to the bruises. No one put their hand up against it. And instead, DCFS was called, and my client was judged guilty. Now, there may be a question of whether this matter is moot. My client is in the military, and during the order of protection and afterwards, he has been restricted from carrying his firearm, meaning he is not ready, and it prevents him from advancing in his military career. And finally, a finding of abuse is the best interest factor. Under the Domestic Violence Act, it allows you to skip straight to parenting without considering any of the other parenting questions. Who's been communicating? Who supports the relationship? And instead, it just says, a parent who is accused of abuse must not be allowed around his or her children, or if they are, it needs to be very controlled. My client went from 16 months of sharing time nearly equally, and a great relationship with his children's mother, to having nothing. He couldn't hug his kids for Christmas Day. He couldn't wish them happy birthday. Again, the act prevents abuse, but parents are allowed to control their children. So what is abuse when it comes to a spanking? Well, if the child is injured. If there's a reason for delivering the spanking, is it excessive? And was the child medically treated? This child saw his physician the day of the incident. The physician didn't render any additional medical treatment. Was a tap on the rear end an appropriate punishment for hitting your brother in the face with a toy? I'd say yes. Was there a reason? Absolutely. Was this child injured? No one testified. The child refused to sit in his car seat. Was in discomfort overnight. And in fact, when he was questioned, he giggled. And he started playing. That's not a child in pain. Children in pain cry. Children in pain are withdrawn. But finally, no one matched the handprints on the child to Brian. Could it have been Teresa? She spanks the kids too. Did she intend it? No. She wasn't abusing her kids. Could the daycare have done it? Possibly. But no one tied the handprints to Brian. That would be the most important finding to get to an order of protection. Once the order of protection was in place, my client saw his children for three hours, which leads to my last point. To modify a parenting plan and to restrict parenting time, you have to look at the actions of the parent. Not what is necessarily in the children's best interest. If it's a parent's behaviors that is causing the parenting time to be changed, it's a restriction. If it's parenting time, it needs to be changed because there are behaviors and a change would be in the children's best interest with the focus on the best interest. It is a modification of parenting. The November hearings were called as a modification of parenting. On the three hours that Brian had with his sons, three hours, one time. And it's the older child, the child who did not get spanked, who is now complaining of behaviors, but they never tied those three hours to Brian. They brought in the child's physician for this. The child had been complaining of ideas that were scary for a five-year-old. Suicidal ideation is what it's called. He was trying to bite himself. He wouldn't calm down. The child's physician was called to the stand. And the child's physician at first, the treating psychiatrist said, yes, stopping visitation was a great idea until I got a better handle on what was going on. He did not recommend the visitation remain suspended. Yet my client's visitation with his older child is suspended and has remained suspended. He has spent three hours with his child since October. Three hours. This really is a case about parenting and her parenting decisions and wanting to stop parenting. That is evident from the pleadings in the file. The whole goal from August 4th and the second pleading to modify parenting time. It's about stopping Brian, a strong parent, from equally raising his children with his child's mother, a position he had enjoyed for 16 months. The evidence was replete that Teresa stopped all information. That she wouldn't communicate about the children's needs. She had other people she could reach out to. And instead, all of it stopped. And she has been the only parent in control. Under the Divorce Act, this would not be allowed. It would look at the holistic picture of what was in the children's best interest. Children have to be controlled. They have to be disciplined. Otherwise, you end up with rowdy kids. No one matched these bruises. And finally, again, race judicata and collateral estoppel would have prevented the exploration into the behavior. Some of which were prior to even one of the children being born. And instead, it would have focused on the children's best interest if this matter had been heard before the correct judge during using the correct mechanisms to modify a parenting plan instead of using an order of protection to restrict and then remove all parenting from my client. And for that reason, I ask that you reverse and remand with instructions that no evidence prior to the divorce be allowed. And for a rehearing in my client's parenting time in the interim pursuant to Rule 366, be restored so that he can again enjoy being a parent to his two little boys. Thank you. Do you have any questions? Not at this time. Justice Wharton, Justice Welch, do you have any questions? No questions. Ms. Rice, are you ready to proceed? I am, Your Honor. Then go right ahead. And I'm sorry. Obviously, Ms. Bradley, you'll have time for a rebuttal. Thank you, Your Honor. May it please the court. Respectfully, there are obviously a number of issues that I disagree with, with Ms. Bradley. And I would start this morning by a quick recitation of some of the history that is pretty specific and well-cited in both parties' appellate briefs that were submitted to the court. First and foremost, when the parties dissolved their marriage in or around April of 2019, they did so in an uncontested manner. I believe that from the time that the initial petition for dissolution was filed to the point in time that the uncontested settlement documentation was entered with the court, barely a week had passed from day one to the final day. Neither party appeared in court, neither party testified under oath, neither party presented any evidence or, again, testimony with regard to any issue with regard to the divorce, whether it be financial matters or parenting issues. The family court judge, who was Judge Campbell, did not see either party and was not familiarized with either party. She simply reviewed the uncontested documentation and entered them. The first and only trial court judge to hear any issues with regard to this family was Judge Purchase, as a result of the emergency petition for the order of protection filed by my client Ms. Evans, Teresa Evans, in July of 2020. After signs of physical abuse had manifested in the party's younger child, Samson, who was three at the time and was nonverbal and still has some intellectual disabilities and issues. I will note for the court, again, that from the time that the emergency order protection was entered in July of 2020, there were two interim hearings that were conducted, both parties represented by counsel, and at both periods of both times, each of them about 30 days after the other. The matter was continued for the plenary hearing by agreement. At no point in time in either of those appearances, or in between from July of 2020 to the ultimate initial plenary order protection hearing in October of 2020, did either party ask for the trial court judge purchase to be substituted. Neither party requested that the matter be transferred to the family court, particularly Judge Campbell. And on the day of October 13, 2020, there was no objection by either party for Judge Purchase to hear the hearing for plenary order protection. Both parties were put on notice as far as what the allegations contained in Teresa's petition were, and those did include allegations of past incidents of abuse by Brian to Teresa at times in front of the children, and including the issue in March of 2020, wherein Teresa noticed what she deemed to be suspicious bruising and marks on the younger child after parenting time with his father. And also the, the significant bruising and marks that were found on the younger child on July 24 of 2020, when he was at daycare. With that in mind, first to address the issue of race judicata, and what is Bradley's arguing should be barred testimony. There are two acts at play here, we do have the, the, the marriage act, and we also have the domestic violence act under the domestic violence act under consideration of a petition for an order protection. The court, the trial court is mandated, it shall take into consideration past incidents of abuse by the petitioner, and with regard to potential abuse towards any other family member household member. And in this case specifically children. The argument that her testimony should not have been provided to the court that she had experienced incidents of abuse by Mr Evans during their marriage, again at times in front of the children would be against public policy, quite frankly, that is entirely relevant and essential information for trial court judge to hear and considering whether or not there is abuse potential abuse or harm being being done against the party's children. And again, that is that it's not something that the court may or may not hear the word at play here in the statute is shall with regard to past incidents of abuse. So, the argument that this should be barred testimony, specifically due to entry of uncontested dissolution documents, about a year prior, would go against the intent and clear language of the domestic violence act. Moving on to their argument that the court lacks, or should not have heard this, this proceeding because the family court should hear that again I would go back to the, the fact that the initial family court judge was not familiarized with the with the parties or the subject matter, and neither party made any request to move the, the op the order protection proceedings to the family court at the time of the hearing for the plenary order protection. Moving forward at the time that we were present for hearing on our, and I will note that it was our motion to modify is labeled emergency motion to modify order protection, not parenting time. At the time that we arrived for the hearing on that motion to modify judge purchase was again the only judge who had heard evidence reviewed the evidence and made any determination as it pertained to the issues of abuse had made a ruling that abuse had occurred both during the marriage and after towards the children, and she was absolutely the best court to hear a motion to modify that specific order protection at that time. On top of that, trial court attorney for the for Brian Evans had approximately 20 days from the time that she was provided notice of our motion to modify the order protection until the date of the initial hearing on that motion to request that the matter be transferred to the family court judge. She did not. That motion was was labeled an emergency motion to modify waiting until the morning of hearing to ask that the matter be transferred gave virtually no time for anything to be adjusted or maneuver with regard to the court schedule, and again, the best court to make a determination whether a modification of her own ruling would be judge purchase, not judge Campbell who again had never seen or heard the parties at any point in the past. Miss Rice can ask you a question. Yes. As your client filed a petition to modify the parenting plan in the original dissolution action. Yes. Okay. And has that been assigned to a judge. So, yes, we received the initial case management conference order for that for our motion to modify parenting time after the plenary order protection hearing had already occurred so the initial case management conference for the family pleadings occurred, I believe on December 8 of 2020. Okay. And is that being heard by Judge Campbell or judge purchase. Okay, which is the presiding judge and the family division or one of them. Correct. Okay. Thank you. Thank you, Judge. Moving on to the correct standard with regard to father's parenting time. Again, the court, the trial court judge purchase apply the appropriate standard under the under the domestic violence act. The judge is to determine whether to grant a specific remedy the court shall consider relevant factors including nature frequency severity pattern and consequences of the respondents past abuse of the petition or any family or household member, and the likelihood of danger of future abuse and the trial court judge did in fact make those specific findings. At the conclusion of the October 13 2020 hearing. She therefore, and thereafter, placed some restrictions on father's parenting time ordered it that it be supervised and and be held on Saturdays. I think it was about seven hours in duration. During that time. That is appropriate remedies under the statute, and it was appropriately determined by the court based on the evidence that the court was presented and able to take into consideration. With respect to the, the nature of the evidence presented that led to the court's finding again. The court appropriately found that abuse had occurred. Not only did we that did petitioner present multiple witnesses that were able to testify to the severity and appearance of the marks on the young child again who is largely nonverbal nonverbal three year old. They were able to speak with the older brother who had witnessed at least a part of the, the physical acts against his brother the night prior, and the, and the court was able to personally review picture evidence of the marks that were present on the child, the morning that they were found over and above the court was then appropriately able to hear evidence of the past incidents of abuse that that Teresa had had endured during the marriage, and again was able to hear evidence appropriately that that some of those incidents of abuse had occurred in front of the children, and that the incident at question in July of 2020 occurred in front of the older child. The court then appropriately again applied the remedies with regard to the evidence presented in modifying the parenting plan or the parenting time of the father, and I will note again that in both the original or initial plenary order protection proceeding as well as in the modification proceeding, the court noted that it intended its order to be temporary in nature, and noted that the intent was, and the understanding was that that the family court would be able to basically take over the matter and further assess parenting issues on a, on a, you know, either a temporary or permanent basis thereafter. That is why the court entered the that the order protection in the initial parenting structure would only be in place for 90 days under that order protection, and the court wasn't asked to but did not extend or otherwise modify the initial plenary order protection except as it pertained to the parenting time of father with the, with the older child who, after the initial plenary hearing and after the initial period of parenting time with his father began to exhibit extreme changes in behavior started making suicidal statements, and was thereafter routinely cared for by multiple physicians was hospitalized taken by ambulance because of these outbursts. standing directly after the first period of parenting time with his father and leading up to the second period of parenting time which did not occur because he was transferred by ambulance to the hospital because of his extreme changes in behavior. And with regard to that modification the court again properly applied the appropriate standard to make that modification under the act you know specifically section 750 ILCS 60 backslash 224. So for due to all those arguments, your honors, I would ask that the trial courts orders and rulings, both from October 13 of 2020 and November 25 of 2020 remain in effect, and that the that they stand as is. Thank you, counsel, Justice Wharton Justice Welch any questions. No question. Thank you, Miss Bradley rebuttal. Thank you, Your Honor. I'm going to start with the public policy argument of the Domestic Violence Act. Yes, the Domestic Violence Act says shall include and explore past incident instances of abuse. However, the Domestic Violence Act also tells the court to a apply the Code of Civil Procedure, and be the dissolution act if children are involved. Both of those prevent the introduction of evidence that could have been brought in a prior case. race judicata is a public policy that is older than time. It is the foundational policy of finality of judgments. The dissolution act makes it very very very clear that behaviors prior to the entry of the last order are not to be brought back up. It instead asked what facts have arisen since race judicata says, if you didn't get your chance. You don't get it again later. The Jackson court Wilson versus Jackson also holds this Radke says Domestic Violence Act cases are not places to change custody. No one made a specific finding for the November order that the behaviors Brian had exhibited in the three hours he had his children for three hours he's given seven he had to go to work, somehow harmed his children. No one made the accusation and again appropriately combining the dissolution act, the Domestic Violence Act, the finding is not there. And turning back to the last one. The dissolution act is incorporated into the Domestic Violence Act. This means that the court, a could not look at facts that had existed prior to the entry of the parenting plan. Back in 2019. Yes, it was six days from the entry from the petition for dissolution of marriage to the entry the parenting plan. However, the party stipulated to various facts, including that they both met their children's best interest. If Teresa was so scared and had been abused, then why did she want a peaceful divorce and continue to live with Brian. As the record shows, until the divorce was complete and maybe a bit after. It is simply improbable that Brian would behave decently via text message and email, and probably in his verbal communications with Teresa in the 16 months after they got divorced. The evidence was clear that he spoke to his children's mother with nothing but respect. In 16 months, a tiger doesn't change its stripes. If he was abusive. He would have been abusive by text. But there's no evidence that he abused Teresa, there's no evidence that he abused the older child. And there's not a tie to the evidence that the bruises on the younger child were given by him in six weeks prior that daycare had been investigated there's no one that looked at the handshake. The doctor who was treating the child for his outburst didn't recommend continuing to restrict visitation yet he had prior. He said, Your Honor, this is your job. I'm not giving a recommendation. Why all of it, because my client didn't abuse his kids. He disciplined to rowdy little boys, being a strong parent to raise strong appropriately behaved children. And he deserves to have his parenting time restored, and to have the correct standards of evidence applied to him, where the behaviors that are 237 12 years old are not drug backup. The law does not support, even the Domestic Violence Act, bringing up those behaviors, and instead supports that the that a case like this be heard before the dissolution judge. No one brought it up, but that doesn't mean that the local rule doesn't apply that the Supreme Court rule doesn't apply and the Domestic Violence Act which all indicate this goes to the dissolution judge, and the only one judge should hear this. Those rules are not merely aspirational, and if they had been held right. This case would have been hard under the dissolution act, and the behaviors from prior to 2019 would have never come into the courthouse. And again for that reason I asked you reverse and remand and restore my clients parenting time so that he can continue to parent his children. Does anybody have any questions. This is Morgan just as well. No questions. Well thank you counsel, obviously we'll take this matter under advisement and we will issue an order in due course. Believe that concludes our court proceedings for the day and this court will stand in recess I think until tomorrow at nine o'clock so council have a great day. Thank you.